UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DANYALE SHARRON TUBBS,

                Plaintiff,

v.

SHERRI PAYTON,

                Defendant.

_____/

Case No. 1:22-cv-649

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 3) and was granted leave to proceed *in forma pauperis* (ECF No. 4). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the

undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan.  The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.   Plaintiff sues LRF General Office Assistant/Clerk Sherri Payton.  (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that on March 22, 2022, he received a book from an approved vendor, titled, "Future Fox Teac-Her," which was written by his sister, who is a "survivor of sexual abuse." (*Id.*, PageID.1, 3.)[2]  Plaintiff states that in the book, Plaintiff's sister offers "advice and [an] educational perspective," and the book "is a healing balm on a hurt and damaged sexual assault survivor." (*Id.*, PageID.5.)

Plaintiff claims that Defendant Payton "censored said book and requested that it be rejected on the premise of it allegedly 'containing or encouraging or providing instruction in the commission of criminal activity and or it interfering with the rehabilitation the prisoner and pos[ing] a threat to security.'" (*Id.*, PageID.3.) Plaintiff received a notice of mail rejection for the book (*see* ECF No. 1-1, PageID.10), and he requested an administrative hearing regarding the rejection.  (Compl., ECF No. 1, PageID.3.)

---

[2] In this opinion, the Court corrects the capitalization and punctuation in the quotations from Plaintiff's complaint and exhibits.

On April 5, 2022, Prison Counselor Emmitt Short (not a party) conducted the administrative hearing, and plaintiff claims that Prison Counselor Short "decided that the book didn't pose a threat to security nor interfered with Plaintiff's rehabilitation . . . and should be given to Plaintiff immediately." (*Id.*)  Plaintiff alleges that Prison Counselor Short indicated that he "believed that the book was written in a self-help perspective." (*Id.*, PageID.4 (quoting Administrative Hearing Report, ECF No. 1-1, PageID.11).)   Plaintiff claims that despite Prison Counselor Short's determination, Defendant Payton "still refused to give Plaintiff his book." (*Id.*, PageID.3–4.)   Plaintiff alleges that Defendant Payton "went outside of MDOC established policy and contacted central office and asked them to place the book on the restricted list even though it didn't violate policy." (*Id.*, PageID.4 (citing Administrative Hearing Report, ECF No. 1-1, PageID.11).)  Plaintiff claims that by having the book placed on the restricted list, Defendant Payton "eliminated" "the administrative review process available to Plaintiff." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendant Payton violated his rights under the First and Fourteenth Amendments to the U.S. Constitution. (*Id.*, PageID.1, 5–6.)   As relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief. (*Id.*, PageID.6.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations,

a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

6

In this action, Plaintiff alleges that Defendant Payton violated his rights under the First and Fourteenth Amendments.

### A.    First Amendment Claim Regarding Book Rejection

Plaintiff alleges that the rejection of the book titled, "Future Fox Teac-Her," which was sent to him in the mail from an approved vendor, violated his First Amendment rights because "Defendant Payton interfered with [his] protected right to voice and share protected speech."  (Compl., ECF No. 1, PageID.1, 5.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)).  A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).  Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail.  *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. 78.

To determine whether prison restrictions on mail, including books and letters, are reasonably related to a legitimate penological interest, the Court must assess the restriction by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental

interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89–90. The United States Supreme Court has held that prison regulations (similar to those in Michigan) allowing prison officials to reject any publication for good reason pursuant to specific criteria did not violate the First Amendment because the regulations were reasonably related to legitimate penological interests. *See Thornburgh*, 490 U.S. at 413.

In *Thornburgh*, the Supreme Court addressed whether the Federal Bureau of Prisons' restrictions on various sources and types of incoming publications violated the First Amendment. The Court upheld a regulation that barred, among other things, all "sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity," as well as the following types of sexually explicit material: "(1) [h]omosexual (of the same sex as the institution population), (2) [s]ado-masochistic, (3) [b]estiality and (4) [i]nvolving children." *Id*. at 405 n.5–6 (punctuation in quotation altered). The Court recognized the legitimacy of the prison's security interest, observing that incoming communications addressed to a general audience, which were likely to circulate, had the capacity to create "coordinated disruptive conduct." *Id*. at 412–13 ("The problem is not . . . in the individual reading the materials in most cases. The problem is in the material getting into the prison." (citation omitted)). Applying the

8

*Turner* standard to both facial and as-applied challenges, the Supreme Court concluded that a Bureau of Prisons' ban on certain types and sources of publications withstood a facial challenge but was unconstitutional as applied to certain exclusions at issue in the case.  *Id.* at 404.  In considering the availability of alternative means of exercising the right, the Court indicated that the "'right' in question must be viewed sensibly and expansively."  *Id.* at 417.  Applying that principle, the Court found that the availability-of-alternative-means inquiry was satisfied because "the regulations permit a broad range of publications to be sent, received, and read."  *Id.* at 418.  Finally, in determining whether there existed obvious, easy alternatives to the restriction, the *Thornburgh* Court recognized that the fact that the regulation bears a reasonable relationship to the legitimate governmental interest is evidence that no obvious and easy alternative is available, and vice versa.  *Id.*  The *Thornburgh* Court concluded that the "regulations, on their face, [we]re not an 'exaggerated response' to the problem at hand," and therefore "no obvious, easy alternative ha[d] been established."  *Id.*

Here, Plaintiff states that the book in question is titled, "Future Fox Teac-Her," and was written by his sister, who is a "survivor of sexual abuse."  (Compl., ECF No. 1, PageID.3.)   Plaintiff claims that Defendant Payton "censored said book and requested that it be rejected on the premise of it allegedly 'containing or encouraging or providing instruction in the commission of criminal activity and or it interfering with the rehabilitation of the prisoner and pos[ing] a threat to security.'"  (*Id.*)

9

Plaintiff requested a hearing regarding the rejection of the book. (*Id.*, PageID.3–4 (citing Administrative Hearing Report, ECF No. 1-1, PageID.11).) In the administrative hearing report, which Plaintiff references in his complaint and which he attached to the complaint, Defendant Payton explained the rejection of the book as follows: "'Future Fox Teac-Her,' has details about the rape of a child. According to [Policy Directive] 05.03.118 'Prisoner Mail,' mail containing or encouraging or providing instruction in the commission of criminal activity" is not permitted because it "interfere[s] with the rehabilitation of the prisoner and [is a] threat to security." (ECF No. 1-1, PageID.11.) Additionally, in the administrative hearing report, the prison counselor, who served as the hearing officer, noted that the April 5, 2022, hearing "[wa]s the second hearing, because the decision [he] submitted to the mailroom was rejected the first time." (*Id.*) The prison counselor further stated: "I believed that the book was written in a self-help perspective and Prisoner Tubbs should have received the book. It is the recommendation of Central Office in Lansing that this book will not be permitted. The book [has] since been submitted to be placed on the restricted list." (*Id.*) In reaching this conclusion, the prison counselor found:

> Language in [Policy Directive] 05.03.118 Paragraph NN, 5 prohibits mail "describing or depicting acts of sadism, masochism, bondage, necrophilia or be[]stiality or describing, depicting or appearing to promote sexual acts involving children." The identified passage clearly describes a sexual act involving a child. Please note there is no language in [the] policy which indicates that such content is permitted if it includes the description in a condemning or technical/non-sexual way if a positive message can be derived from content . . . e.g. if a description of a sexual act involving a child is child is [sic] included in a self-help book, a scientific journal or in pornography, all would violate this policy language and all would need to be rejected. . . .

(*Id.* (ellipses in original).)

This Court, as well as other courts, have held that prison officials have a legitimate interest in preventing prisoners from possessing material that encourages or provides instruction for the commission of criminal activity, such as committing sexual acts with a child. *See, e.g.*, *Markham v. Mote*, No. 1:12-cv-1063, 2014 WL 4662185, at *3 (W.D. Mich. Sept. 18, 2014) (adopting report and recommendation) (holding that "legitimate penological interests were reasonably served by (1) the MDOC policy that prevented inmates from receiving mail that may facilitate criminal activity, and (2) preventing Plaintiff from receiving the particular book in question" (citation omitted)); *Peters v. Simpson*, No. 1:15-cv-751, 2015 WL 5608237, at *11–12 (W.D. Mich. Sept. 23, 2015) (screening Plaintiff's complaint and concluding that Plaintiff failed to state a First Amendment claim regarding the rejection of books about electrical wiring and welding because "[t]he information in these books could be used by a prisoner to disable electrical systems in the facility to aid in an escape attempt or to upset the operations of the facility" and the prison had a "legitimate penological interest in protecting the prison population from having access to information about wiring schemes and welding methods"); *Wells v. Vannoy*, 546 F. App'x 340, 342 (5th Cir. 2013) (discussing that the prison official "rejected [the book] *Pimpology* because it describes techniques of manipulation and control, techniques that prison officials have deemed a potential threat to safety," and that "[a]lthough [the prisoner-plaintiff] disputes [the prison official's] interpretation of the book, we give deference to determinations by prison officials" (citation omitted)); *cf. Thompson v. Campbell*, 81 F. App'x 563, 567 (6th Cir. 2003) (discussing that "the relationship between the policy (prohibiting materials that advocate anarchy or

11

contain obscenity) and the goals (security, order, and rehabilitation) is not 'so remote as to render the policy arbitrary or irrational,'" and that "[b]ecause anarchy and obscenity are incompatible with security, order, and rehabilitation, this policy falls well within the realm of the reasonable" (quoting *Turner*, 482 U.S. at 89–90)).

Here, Plaintiff's own allegations show that the book had content that, at a minimum, discussed the commission of criminal activity because Plaintiff does not dispute that there were accounts of a sexual act with a child; he simply argued that the book was "not promoting sex with a child."  (ECF No. 1-1, PageID.11); *see also Munson v. Gaetz*, 673 F.3d 630, 635 (7th Cir. 2012) (discussing that the prisoner-plaintiff's complaint "provided the prison's legitimate interest in restricting his access to the books [that had drug-related content] and the rational connection between that interest and the restriction takes no imaginative dive into the depths of the prison officials' consciousness").  Accepting Plaintiff's allegations as true, consideration of the four *Turner* factors puts an end to his "regular mail" First Amendment claim regarding the book he received.  As this Court has previously determined, there is a valid rational connection between the rule prohibiting prisoners from possessing material that encourages or provides instruction for the commission of criminal activity and the legitimate governmental interests which the rule furthers: preserving the safety of the institution and the resources of the prison expended to ensure that safety.  *See, e.g.*, *Markham*, 2014 WL 4662185, at *10 (concluding that the *Turner* factors did not weigh in Plaintiff's favor, and explaining that "[t]he Policy Directive[, prohibiting mail if it is a threat to the security of the facility, or may facilitate or encourage criminal activity,] pursuant to which Defendant acted does not

prevent Plaintiff from receiving mail or books, but instead only restricts Plaintiff's ability to possess material which constitutes a threat"); *cf. Richards v. Snyder*, No. 1:14-cv-84, 2015 WL 3658836, at *11 (W.D. Mich. June 12, 2015) (discussing that in applying *Turner*, "[t]he *Ward* [*v. Jones*, 64 F. App'x 442 (6th Cir. 2003),] court determined that 'the disputed photographs [that depicted sexual acts] contribute to a hostile work environment for staff, a sexually charged and hostile environment for prisoners, offensive conduct and hostile acts by prisoners and violations of visiting room policy,'" and the "*Ward* court recognized [that] redacting every publication containing photographs that violate the rule is not a ready alternative because of the administrative burden of a case-by-case redaction" (citation omitted)).

In this action, Plaintiff does not allege that he is otherwise restricted from speaking freely.  Further, Plaintiff has not suggested any means by which the prison could protect its legitimate penological interest in protecting the prison population from having access to information about the commission of crimes other than by rejecting books with such depictions.   Given the deference owed to prison administrators, *Turner*, 482 U.S. at 84–96, Plaintiff fails to state a First Amendment claim against Defendant Payton regarding the rejection of his book.

### B.    Fourteenth Amendment Due Process Clause Claim

Plaintiff also alleges that his due process rights were violated when Defendant Payton rejected the book in question and when the book was added to the MDOC's restricted publications list.  (Compl., ECF No. 1, PageID.3–4, 5–6.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Further, the elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim."  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh*, 490 U.S. 401). The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection.  *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986).  The regulation "must also provide for an appeal of the rejection decision to an impartial third party."  *Id.* at 244.

It is clear from Plaintiff's complaint and the attachments to his complaint that he received the process to which he was due.  Plaintiff received a notice of mail rejection for the book in question.  (ECF No. 1-1, PageID.10.)  Additionally, Plaintiff requested a hearing and was provided that hearing, where he had the opportunity to

14

challenge the rejection.  (*See* Compl., ECF No. 1, PageID.3; *see also* ECF No. 1-1, PageID.11.)  MDOC Policy Directive 05.03.118 also allows for appeal of the decision. MDOC Policy Directive 05.03.118 ¶¶ EEE, FFF (eff. Mar. 1, 2018).

With respect to Plaintiff's claim that Defendant Payton unlawfully deprived him of the book when it was placed on the restricted publications list, he also fails to state a due process claim.  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  515 U.S. 472, 484 (1995).  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff does not, and cannot, demonstrate that the placement of a book on the restricted publications list caused him to experience atypical and significant hardship.  Plaintiff argues that the book had a rehabilitative purpose because it provided "advice and [an] educational perspective" and "is a healing balm on a hurt and damaged sexual assault survivor."  (Compl., ECF No. 1, PageID.5.)  Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based

15

on the Fourteenth Amendment.  *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (discussing that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir.1989) (discussing that there is no constitutional right to rehabilitation).  Without a protected interest in rehabilitation, Plaintiff cannot demonstrate that Defendant Payton deprived him of due process by placing the book in question on the restricted publications list.

Furthermore, to the extent that Plaintiff alleges that Defendant Payton deprived him of property without due process of law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law."  *Id.* at 537.  This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).  Plaintiff must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  The Sixth Circuit has noted that a prisoner's failure to

sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Moreover, to the extent that Plaintiff alleges that Defendant Payton violated the MDOC's policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, Courts

routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992).

For all of the above-discussed reasons, Plaintiff's Fourteenth Amendment procedural due process claims will be dismissed.[3]

---

[3] To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Payton's rejection of the book in question, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in receiving his mail. Consequently, any intended substantive due process claim is properly dismissed.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:  December 12, 2022          /s/ Phillip J. Green
                                   PHILLIP J. GREEN
                                   United States Magistrate Judge

19