UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANYALE TUBBS, #292944,

        Plaintiff,                              Hon. Paul L. Maloney

v.                                       Case No. 1:22-cv-0649

SHERRY PAYTON,

        Defendant.
_____/

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. (ECF No. 29). Plaintiff, represented by counsel, responded (ECF No. 38), and Defendant replied (ECF No. 41). For the reasons articulated herein, Defendant's motion will be granted.

## BACKGROUND

Plaintiff Danyale Tubbs was at all times relevant to this case, incarcerated at the Earnest C. Brooks Correctional Facility (LRF). He brings this action claiming that Defendant, LRF Mailroom Clerk Sherry Payton, violated his constitutional rights by withholding a book he received through the prison mail. The book was written by his sister, a childhood sexual assault survivor, offering advice to other sexual assault victims regarding the healing process. (ECF No. 1 at PageID.5). On March 22, 2022, Defendant withheld the book on the basis that the details of the childhood rape violates Rule NN11 of the Michigan Department of

-1-

Corrections (MDOC) Policy Directive 05.03.118.[1]   (ECF No. 1-1 at PageID.10).   After

Defendant withheld the book, Plaintiff requested an administrative hearing.   (ECF No. 37 at

PageID.188).

Prison Counselor (PC) Short conducted the hearing and recommended that Plaintiff

receive the book because Plaintiff's sister wrote the book from a "self-help perspective."   (ECF

No. 1-1 at PageID.11).[2]   Nevertheless, Defendant refused to give Plaintiff the book, and a

second administrative hearing was held.   At the conclusion of the second hearing, and in a

report dated April 5, 2022, PC Short found that the book was prohibited under Policy Directive

05.03.118 Paragraph NN5, because the book describes "a sexual act involving a child."   (*Id.*).

The book was then placed on the restricted list.   (*Id.*).

Plaintiff filed an initial grievance against Defendant regarding the denial of the book on

May 11, 2022.   (ECF No. 30-3 at PageID.158).   The grievance was rejected two days later as

untimely.   (*Id.*).   That decision was sustained through the Step III appeal.   (ECF No. 30-3 at

PageID.155).

Plaintiff filed this action on July 18, 2022, asserting that the censoring of the book

violated his First Amendment rights, and that Rule NN5 was overbroad.   (ECF No. 1 at

---

[1] The policy directive prohibits inmates from receiving mail "that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner."   MDOC Policy Directive 05.03.118, Rule NN11.

[2] Neither party has provided the date of the first hearing.   The Court need not concern itself with that, however, as PC Short's April 5, 2022, report provided the decision to prohibit the book, which decision triggered the time period for initiating the administrative grievance process.

PageID.5).   Plaintiff also claimed that the failure to enforce the initial administrative ruling violated his due-process rights.   (*Id.*).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.  56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."   *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial."   *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.   *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts."   *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."   *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a

trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such

administrative remedies as are available.   *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints.   *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the **PLRA**," which the defendant bears the burden of establishing. *Ibid.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the **PLRA** exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."   *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the **PLRA** to 'properly exhaust.'   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the **PLRA**, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.   (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019).   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of her motion, Defendant has presented evidence that Plaintiff filed a single grievance regarding the incident in question on May 11, 2022.   (ECF No. 30-3 at PageID.158).   In his grievance, Plaintiff cites two conversations he says he had with PC Short regarding the book, one during the administrative hearing on April 5, 2022, and a second on May 9, 2022. (*Id.*).   The April 5 date is the only reference in the grievance to an administrative hearing. Plaintiff cites May 9 as the date he says he had a conversation with "PC Short and RUM Roykin" in which they "agreed [with Plaintiff] that the [book disposition] process was skewed."   (*Id.*). While Plaintiff alleges that Defendant "contacted Lansing requesting back up and assistance on how to justify rejecting [the] book" (*id.*), the grievance offers nothing to suggest that there was

-6-

any hearing after April 5. In other words, there is nothing in the grievance that supports Plaintiff's current assertion that a hearing was conducted on some unspecified date in May. (Pltf's Aff. at ¶ 9, ECF No. 37 at PageID.188-89).

The only record of an administrative hearing regarding the denial of the book in question is a report dated April 5, 2022, in which PC Short issues his decision prohibiting Plaintiff from receiving it. (ECF No. 1-1 at PageID.11). Notably, Plaintiff filed this report as an exhibit to his complaint, and referenced it within the complaint, yet he did not question the accuracy of the information in that report, including the date it issued. (*See* Compl. ¶ 13, ECF No. 1 at PageID.3-4). Nor does the complaint allege, as Plaintiff now asserts, that there was a hearing conducted after April 5, 2022, or that he failed to receive that report until May 9, 2022. (*See* Pltf's Aff. at ¶¶ 9-10, 14, ECF No. 37 at PageID.188-90).

PC Short has provided an affidavit in which he testifies that he conducted the second hearing on April 5, 2022, and informed Plaintiff of his decision to uphold the book rejection on that date. (Short Aff. at ¶¶ 3-5, ECF No. 48 at PageID. 277-78). He generated the signed April 5, 2022, report after the second administrative hearing, and that he provided the report that day to the mailroom for distribution. (*Id.* at ¶¶ 3, 5). PC Short's testimony is sufficient to establish that the report is a business record (*id.* at ¶ 8, PageID.279), and that it was his practice to finalize and sign a report the day of the hearing (*id.* at ¶ 3, PageID.278).

In light of this evidence, and inherent inconsistencies between Plaintiff's current assertions and his initial grievance, Plaintiff's affidavit is insufficient to create a genuine issue of material fact. Plaintiff baldly asserts in his affidavit that he did not receive the April 5, 2022,

report until May 9, 2022.  (Pltf's Aff. at ¶¶ 13-14, ECF No. 37 at PageID.189-90).   But his grievance – not to mention his complaint – says nothing about that.   Instead, the grievance notes simply that he spoke to PC Short on May 9, and that PC Short agreed with him that the book distribution review process was "skewed."   (ECF No. 30-3 at PageID.158).   That is inherently inconsistent with Plaintiff having received on that date a report denying him access to the book in question.   Moreover, Plaintiff offers nothing more than speculation to counter PC Short's testimony that, pursuant to his regular practice, he issued and signed the April 5, 2022, report the same day as the second hearing.   (*See* Pltf's Aff. at ¶ 14, PageID.190 ("While I do not have first hand knowledge of the reason why the Second Report included the earlier date, I assume that P.C. Short kept the date of the first hearing on the Second Report because it was a continuation from the prior hearing.")).   In sum, the evidence is such that no reasonable trier of fact could find that Plaintiff's initial grievance was timely.   *Cf. Calderone*, 799 F.2d at 259.

Defendant has satisfied her burden of demonstrating that Plaintiff failed to exhaust his administrative remedies regarding his pending claims against Defendant, as his initial grievance was untimely.   Because Defendant Payton's evidence satisfies her burden on the exhaustion question, the Court will grant her motion for summary judgment and Plaintiff's claims shall be dismissed without prejudice for failure to exhaust administrative remedies.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF

No. 29) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

A separate judgment will issue.


Date:  September 19, 2025                         /s/ Paul L. Maloney
                                                  PAUL L. MALONEY
                                                  United States District Judge